IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                                        PLAINTIFF

V.                      Criminal No. 2:16-cr-20015-PKH-MEF-1
                        Civil No. 2:18-cv-02121-PKH-MEF

WILLIAM JACKSON MOATES, JR.                                     DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed July 16, 2018 (ECF No. 42) and his Amended Motion filed on July 30, 2018 (ECF No. 46). The United States filed its response on August 28, 2018. (ECF No. 51). Petitioner filed a reply on January 2, 2019. (ECF No. 56). The matter is ready for Report and Recommendation.

### I. Background

On May 11, 2016, Defendant, William Jackson Moates, Jr. ("Moates"), was named in a 25-count Indictment charging him with 13 counts of wire fraud (Counts 1, 3, 4, 5, 6, 8, 9, 10, 11, 15, 17, 18 and 23); seven counts of money laundering (Counts 2, 7, 14, 16, 19, 21 and 22); one count of theft concerning programs receiving federal funds (Count 12); two counts of mail fraud, aided and abetted by each other and others (Counts 13 and 20); one count of theft or embezzlement from an employee benefit plan (Count 24); and, one count of bank fraud (Count 25). (ECF No. 1).

Moates was arrested on May 13, 2016. (ECF No. 11). He appeared for arraignment with his retained counsel, Rex W. Chronister ("Chronister"), on May 16, 2016, at which time he entered a not guilty plea to each count of the Indictment. (ECF No. 6). Chronister requested discovery in open

-1-

court, and Moates was released on a signature bond and conditions of release.  (ECF Nos. 6, 7, 8).

On October 11, 2016, Moates appeared with counsel before the Hon. P. K. Holmes, III, Chief U. S. District Judge, for a change of plea hearing.  (ECF No. 14).  A written Plea Agreement (ECF No. 15) was presented to the Court, and Moates pleaded guilty to Counts 5, 11, 12, 13, 14 and 24 of the Indictment.  (ECF No. 14).  The Court found that Moates' guilty pleas were voluntary, supported by a factual basis, and the pleas were accepted.  (*Id*.).  The Court reserved approval of the Plea Agreement pending completion of a Presentence Investigation Report ("PSR").  (*Id*.).

An Initial PSR was prepared by the United States Probation Office on April 27, 2017.  (ECF No. 18).  On May 10, 2017, the Government advised that it had numerous objections to the Initial PSR, and these were principally related to the amount of actual loss suffered by Moates' victims or the amount of intended loss.  (ECF No. 20).  On May 11, 2017, Chronister submitted 13 objections to the Initial PSR on Moates' behalf.  (ECF No. 22).  Moates' objections concerned factual matters, the amount of actual loss, application of a sentencing enhancement for vulnerable victims, and that he intended to seek a downward variance based on health issues.  (*Id*.).

On May 26, 2017, a Final PSR was submitted to the Court.  (ECF No. 23).  In an Addendum, U. S. Probation noted resolution, or no changes made, as to all objections.  (ECF No. 23-1).

The Final PSR determined that Moates is accountable for an actual loss to his victims in the total amount of $5,710,816.62.  (ECF No. 23, ¶ 159).  It was noted: "the overwhelming information in this case would likely have resulted in an intended loss to exceed $8,000,000.  However, the probation office believed that the actual loss in the sum of $5,710,816.62 was undeniably a conservative estimate as to the loss Moates should be held accountable for, but also representative of a readily provable figure."  (*Id*., ¶ 162).  It was also reported that the actual loss figure as

determined by the probation office falls within the stipulated loss agreed to by the parties in the Plea Agreement.  (*Id*., ¶ 163; ECF No. 15, ¶ 19).

Moates' Base Offense Level was determined to be 7 pursuant to U.S.S.G. § 2B1.1(a)(1). (ECF No. 23, ¶ 177).  The $5,710,816.62 actual loss to victims resulted in an 18-level enhancement.[1] (*Id*., ¶ 178).  As the offenses involved a substantial financial hardship to five or more victims, a 4-level enhancement was applied.  (*Id*., ¶ 179).  A 2-level adjustment was made because the offenses involved sophisticated means and Moates intentionally engaged in or caused the conduct constituting sophisticated means.  (*Id*., ¶ 180).  Since Moates was convicted of money laundering under 18 U.S.C. § 1957, a 1-level increase applied.  (*Id*., ¶ 181).  Because Moates knew or should have known that a victim of the offense was a vulnerable victim, a 2-level enhancement was added.  (*Id*., ¶ 182). Finally, Moates had abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offenses, so another 2-level enhancement was applied.  (*Id*., ¶ 183).  These enhancements resulted in an Adjusted Offense Level of 36.  (*Id*., ¶ 185).  After a 3-level reduction for acceptance of responsibility, Moates' Total Offense Level was determined to be 33. (*Id*., ¶¶ 187-189).  Moates had no criminal history, so his criminal history score of zero placed him in Criminal History Category I.  (*Id*., ¶ 201).

The statutory maximum term of imprisonment for the counts of conviction are: 20 years each for Counts 5 and 11; 10 years for Count 12; 20 years for Count 13; 10 years for Count 14; and, 5 years for Count 24.  Therefore, the total maximum term of imprisonment is 85 years.  (*Id*., ¶ 250). Based upon a Total Offense Level of 33 and a Criminal History Category of I, the advisory guidelines sentencing range was 135 to 168 months imprisonment.  (*Id*., ¶ 251).

---

[1] A loss greater than $3,500,000 but less than $9,500,000.  U.S.S.G. § 2B1.1(b)(1)(J).

Chronister filed a Sentencing Memorandum on June 7, 2017. (ECF No. 25). In it, he argued the "vulnerable victims" enhancement should not apply, that a downward variance was warranted due to Moates' rare health condition, and he suggested a sentence of six years (72 months) imprisonment was sufficient but not greater than necessary to comply with the goals of sentencing.

Moates appeared for sentencing on June 28, 2017. (ECF No. 27). Upon inquiry, Moates stated that he was satisfied with the representation and advice of his counsel. (*Id.*, p. 1; ECF No. 49, p. 5). The Court confirmed that Moates had an opportunity to review and read the PSR and discuss it with his counsel. (*Id.*). The PSR was reviewed in open court, and the Court found that given the range in U.S.S.G. § 2B1.1, "whether the Court used the actual loss or the intended loss, the Guideline calculation would be the same." (ECF No. 49, p. 6). Addressing Moates' first five objections to the PSR, the Court clarified that Moates' only objection was one of timing[2], and the Court concluded, "[s]o if it's only a question of timing, it doesn't appear to be an objection the Court needs to rule on," to which Chronister agreed. (*Id.*, p. 8). To the extent there was an objection that needed to be ruled on, the Court overruled the objection. (*Id.*). The Court determined that Moates' objection No. 7 to the PSR did not affect the Guidelines calculation, and Chronister agreed. (*Id.*, pp. 8-9). Next, Moates' objection to the vulnerable victim enhancement was discussed and argued, with the Court finding that the enhancement applied and overruling Moates' objection. (*Id.*, pp. 9-14).

Government's Exhibit 1, being a letter from Dr. TeCora Ballom, Rear Admiral for the U. S. Public Health Service, Federal Bureau of Prisons, regarding the BOP's ability to treat Moates' medical condition was received in evidence. (*Id.*, p. 14).

---

[2] Moates contended that his involvement ended in December, 2014, as opposed to January, 2015 as reported in the PSR. (ECF No. 49, pp. 7-8).

-4-

The Government then presented testimony from Steve Williams, a forensic accountant with the FBI, in support of showing where the fraudulently obtained funds went. (*Id*., pp. 14-39). To summarize Mr. Williams' testimony, he explained that Moates used the fraudulently obtained funds for his own personal benefit in various ways, including: payment of personal taxes; a remodel of his home and office; payment of medical expenses; payment of his mortgage (and rent during the remodel); ATM withdrawals; purchase of jewelry; travel (a cruise and a trip to Africa); other personal purchases (Amazon and iTunes); payments made to close family members; and, other checks and transfers payable to himself or his wife. The total of these personal expenditures was just over $2,000,000. (*Id*., pp. 32-33). Mr. Williams also related that approximately $3,500,000 of fraudulently obtained client funds went back in to Moates' business, including credit card payments of over $500,000, and payments to other investors who were defrauded and whose money was never invested. (*Id*., pp. 18, 36-37). Moates presented no rebuttal evidence. (*Id*., p. 39).

The Court then adopted the PSR without changes and as supplemented to the extent that the testimony of Mr. Williams described what happened to the funds that were obtained through the counts of conviction. (*Id*., pp. 39-40). The Court also expressed final approval of the Plea Agreement. (*Id*., p. 40). Victim impact statements were received, and several victims addressed the Court at sentencing. (*Id*., pp. 45-56).

The Government "[did] not doubt that [Moates'] use and likely abuse of prescription pain medication lowered his inhibitions to commit these crimes and helped him escape from the reality of what he was doing," but it argued that Moates' pride and greed were the motivating factors behind his criminal conduct, and it was noted that letters of support from Moates' closest family members expressed the view that he was innocent and the scapegoat of some wider conspiracy. (*Id*., pp. 58-

60). The Court also recognized this, stating "the Court is somewhat bothered by statements of people who don't acknowledge the criminal conduct that the Defendant pled guilty to." (*Id*., p. 60).

Chronister argued that Moates "took the wrong path," but that "there was a meeting with family members of the victims[3] who were aware of all of this happening that encouraged Mr. Moates to take the path he took." (*Id*., p. 65). Chronister also raised the issue of Moates' use of prescription pain medications, arguing that Moates' inhibitions may have been impaired. (*Id*., p. 66). An argument for a downward variance because of Moates' health condition was made. (*Id*.).

Choosing to exercise his right to allocution, Moates stated, "I accept the responsibilities for this," but also "[t]his is not me," and "I don't remember all of it." (*Id*., p. 67).

Finding that the BOP is capable of taking care of Moates' medical condition, the Court concluded that a downward variance because of Moates' medical condition was inappropriate. (*Id*., p. 69). Turning to the nature and circumstances of the offense, the Court commented that "this is some of the most reprehensible, fraudulent conduct I have seen." (*Id*.). The Court noted that Moates "used religion to gain the trust of a lot of investors," and "these are people without means who now have nothing." (*Id*., pp. 69-70). It was also noted that the offense conduct occurred over a period of four years; that it even "turned into a Ponzi scheme" where Moates would take money from investors and give it to other investors; and, that two weeks after his arrest Moates filed personal bankruptcy and "some of the victims are listed as unsecured creditors ... which really, really somewhat astounds me." (*Id*., pp. 70-71). The need to reflect the seriousness of the offense and to

---

[3] Actually, only one family member, David Burton, of only one victim, Judy Burton, was involved in a meeting with Moates and another Trilennium employee, Steve Scott, when it was decided not to tell Judy Burton that her money placed with Robert Hague-Rogers had been lost. (ECF No. 23, ¶ 88).

deter other similar criminal conduct were also referred to by the Court in support of a Guidelines sentence. (*Id*., p. 71). The Court then imposed a Guidelines sentence of 150 months imprisonment on Counts 5, 11, and 13, a term of 120 months imprisonment on Counts 12 and 14, and a sentence of 60 months on Count 24, all to run concurrently. (*Id*., p. 73). Three years supervised release was imposed on each count of conviction, all to run concurrently. (*Id*.). No fine was imposed "because if there is any monies available, it ought to go towards the payment of restitution," which was ordered in the amount of $5,710,816.62, and $600.00 in special assessments were ordered. (*Id*., p. 75).

Upon imposition of sentence, the Court advised Moates of his appellate rights, including the right to appeal *in forma pauperis*. (*Id*., pp. 76-77).

Judgment was entered by the Court on June 28, 2017. (ECF No. 29). Moates did not pursue a direct appeal from the Judgment.

On July 16, 2018, Moates filed his *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion"). (ECF No. 42). The motion was incomplete and was not signed by Moates under penalty of perjury, so on July 17, 2018 an Order was entered directing Moates to complete and file the standard form § 2255 motion on or before August 17, 2018. (ECF No. 44). On July 30, 2018, Moates filed his completed motion under § 2255. (ECF No. 46). He declared under penalty of perjury that his motion was placed in the prison mailing system on July 10, 2018, but the hand-written date of execution is shown as July 11, 2018. (*Id*., p. 14).

The motion, as amended, raises four grounds for relief, which are summarized as follows:

Ground One: Ineffective assistance of counsel prior to change of plea, including counsel's failure to investigate Moates' claims, to review the entire discovery, and to review applicable law; failure to file a motion to suppress the evidence seized by the Government; and, failure to investigate Moates' claims of diminished capacity.  (*Id*., pp. 4-6).

Ground Two: Ineffective assistance of counsel prior to the sentencing hearing.  Moates claims he never received the discovery and computer records the Government promised him to prepare for sentencing, and that counsel never notified the Court of this.  Moates also asserts that counsel failed to seek a departure due to Moates' diminished mental capacity.  "Because of Attorney Chronister's actions I was not able to prove that I was not responsible for the amount of missing funds and that I qualified for a departure from my sentencing range."  (*Id*., p. 7).

Ground Three: Ineffective assistance of counsel during the sentencing hearing.  Moates claims his counsel "failed to notify the Court that the government had purposely erased the data that would have vindicated me or at a minimum lowered the loss amounts," and "failed to present evidence that would have supported a downward departure or variance of my sentence due to unwarranted disparity."  (*Id*., p. 8).

Ground Four: Ineffective assistance of counsel after sentencing hearing.  Moates alleges he asked counsel to file an appeal on his behalf, but that he was dissuaded from an appeal by counsel because of the costs involved; that "Chronister never told me that I could have obtain (sic) In Forma Pauperis status with the Court and not be required to pay up front for my appeal"; and, that "I would have appealed my case had Attorney Chronister informed me that I could appeal without prepayment."  (*Id*., p. 10).

The United States' response to the motion, as amended, was filed on August 28, 2018.  (ECF

No. 51).  Moates filed a reply on January 2, 2019.  (ECF No. 56).

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Moates' Motion, as amended, and the files and records of this case conclusively shows that Moates is not entitled to relief, and it is recommended that his Motion, as amended, be dismissed with prejudice without an evidentiary hearing.

### A.  Timeliness

A one year period of limitation applies to motions under 28 U.S.C. § 2255.  This period runs from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or, (4) the date on which the facts supporting

the claim or claims presented could have been discovered through the exercise of due diligence.  28

U.S.C. § 2255(f).

The United States has not raised the issue of timeliness in its Response, but the circumstances

present in the record cause concern regarding whether Moates' § 2255 Motion is timely.

Based upon the allegations contained in Moates' § 2255 Motion, the operative date in this

case is "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).

Moates' Judgment was entered on June 28, 2017.  (ECF No. 29).  Had Moates wished to file an

appeal, he was required to do so within 14 days.  *See* Fed. R. App. P. 4(b)(1)(A)(i).  Moates did not

file an appeal, and his judgment of conviction thus became final on July 12, 2017.  *See Murray v.*

*United States*, 313 F. App'x 924 (8th Cir. 2009).  From that date, Moates had one year, or until July

12, 2018, to timely file a § 2255 habeas petition.

Application of the "prison mailbox rule" could place the filing of Moates' § 2255 Motion

within the one-year limitations period.

Rule 3(d) of the Rules Governing Section 2255 Proceedings provides the following:

> "A paper filed by an inmate confined to an institution is timely if
> deposited in the institution's internal mailing system on or before the
> last day for filing.  If an institution has a system designed for legal
> mail, the inmate must use that system to receive the benefit of this
> rule.  Timely filing may be shown by a declaration in compliance
> with 28 U.S.C. § 1746 or by a notarized statement, either of which
> must set forth the date of deposit and state that first-class postage has
> been prepaid."

It is Moates' burden to show his entitlement to the benefit of the prison mailbox rule.

*Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001).

Moates' § 2255 Motion was filed of record on July 16, 2018 (ECF No. 42), four days past the end of the limitations period.  That initial motion, however, was incomplete as it: (1) ended at page eight, and omitted any further information relating to Ground Three (or any other grounds for relief), and omitted information responsive to questions 13 through 18 of the standard form § 2255 motion (AO 243), including a statement regarding timeliness; (2) it did not contain a statement of the relief requested; and, (3) it was not signed under penalty of perjury by Moates, along with a statement regarding when the motion was placed in the prison mailing system.  See Rules Governing § 2255 Cases, Rule 2; AO 243.  Due to these deficiencies, the Court entered an Order on July 17, 2018 directing Moates to complete and file a standard form § 2255 motion no later than August 17, 2018.  (ECF No. 44).  On July 30, 2018, Moates filed his completed motion under § 2255.  (ECF No. 46).  Regarding timeliness, Moates stated, "[s]ince this Motion is being filed July 10, 2018, I believe I am within the time permitted and entitled to be heard."  (ECF No. 46, p. 12).  He declared under penalty of perjury that his motion was placed in the prison mailing system on July 10, 2018 (the date being typed), but his hand-written date of execution is shown as July 11, 2018.  (*Id*., p. 14).  Thus, if executed by Moates on July 11, 2018, the motion could not have been placed in the prison mail system on July 10, 2018, and there is nothing else in the record to support compliance with the "prison mailbox rule."

The undersigned finds that Moates has not shown entitlement to the benefit of the "prison mailbox rule," and his § 2255 Motion was not filed within one year of the date the judgment of conviction became final.  Further, Moates has failed to allege and demonstrate the presence of either statutory or equitable reasons to toll the limitations period, so any such tolling would be inappropriate.

-11-

Accordingly, because the Motion has been filed beyond the applicable one year period of limitation, the Court lacks jurisdiction to consider the merits of Moates' claims and his § 2255 Motion should be summarily dismissed.

The undersigned will, nevertheless, proceed to address the merits of Moates' claims.

### B.  Standards Applicable to Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689.  Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690).  Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991).  If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  The United States Supreme Court has clarified that the

proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687).

### C.  Validity and Effect of Moates' Guilty Pleas

Moates entered guilty pleas to the offenses of conviction.  One who enters a plea of guilty waives his right to request relief under 28 U.S.C. § 2255 except for those issues related to jurisdiction only.  *See Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989) ("In pleading guilty, a defendant waives all challenges to the prosecution except those related to jurisdiction," including claims regarding search and seizure, privilege against self-incrimination, and failure to disclose favorable evidence), *cert. denied*, 493 U.S. 869 (1989).

When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea.  *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973). As the Court in *Tollett* observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in *McMann*[4].
>
> A guilty plea, voluntarily and intelligently entered, may not be

---

[4] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.").

vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id.* at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

In the present case, Moates was represented by experienced retained counsel, Chronister, throughout the criminal proceedings leading to and including the change of plea hearing. Chronister represented Moates at the arraignment (ECF No. 6), during which Chronister requested discovery pursuant to the Court's Pretrial Scheduling Order (ECF No. 10). Chronister sought and obtained a

-14-

continuance as "this case involves substantial written documentation and bank records that must be reviewed." (ECF No. 12). Chronister sought a second continuance of the trial date due to medical treatment Moates was receiving. (ECF No. 13).

Chronister negotiated a written Plea Agreement with the Assistant United States Attorney prosecuting the case. Chronister carefully reviewed the Plea Agreement with Moates before obtaining Moates' signature on it. (ECF No. 15, ¶ 41(a)). The written Plea Agreement informed Moates of the counts of conviction, being Counts 5, 11, 12, 13, 14 and 24 of the Indictment, and the counts to be dismissed. (*Id.*, ¶ 1). Moates acknowledged that he had fully discussed with his counsel the facts of the case and the elements of the crimes to which he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which he was pleading guilty; and, he admitted the factual basis for the pleas. (*Id.*, ¶ 12). The Plea Agreement advised Moates of his constitutional and statutory rights, including the right to persist in his plea of not guilty. (*Id.*, ¶ 13).

By signing the Plea Agreement, Moates acknowledged that he had read the agreement and had carefully reviewed every part of it with his counsel; that he fully understood the Plea Agreement and was not under the influence of anything that could impede his ability to fully understand it; that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the Plea Agreement; that he was satisfied with the legal services provided by his defense counsel in connection with the Plea Agreement and matters related to it; and, that he entered into the Plea Agreement freely, voluntarily, and without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion. (*Id.*, ¶ 40).

During the change of plea hearing on October 11, 2016, Moates was sworn on oath and

examined about the offenses; the Court inquired of Moates about his age and level of education; inquiry was made as to whether Moates was under the influence of alcohol or drugs, and whether he was able to comprehend the proceedings; inquiry was made as to whether Moates was satisfied with his counsel; the possible severity of sentence was explained, as well as Moates' constitutional and statutory rights; and, upon such inquiry in open court, the Court determined that Moates' guilty pleas were voluntary and intelligent, and that there was a factual basis to support the guilty pleas. (ECF No. 14; ECF No. 50).

Moates does not specifically allege in his § 2255 Motion that ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent, and invalid; instead, he claims that "I would have never plead guilty and insisted on proceeding to trial had I known that Attorney Chronister was required to review the entire discovery, the relevant law and investigate my claims of innocence before advicing (sic) me to plea (sic) guilty." (ECF No. 46, p. 6). Moates' conclusory allegations fail to establish that his counsel's advice during plea negotiations "fell below an objective standard of reasonableness," and that there exists "a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1103 (8th Cir. 2011).

As noted above, Moates acknowledged that he fully discussed the facts of the case with defense counsel; that he read the Plea Agreement and carefully reviewed "every part of it" with defense counsel; and, that he was satisfied with the legal services provided by defense counsel "in connection with the Plea Agreement and matters related to it." (ECF No. 15, ¶¶ 12, 40). Moates also confirmed both in the Plea Agreement and at the change of plea hearing that he fully understood the Plea Agreement; that he was not under the influence of anything that could impede his ability

-16-

to fully understand the Plea Agreement; and, that he entered into the Plea Agreement freely, voluntarily, and without reservation. (*Id*., ¶ 40; ECF No. 50).

Moates' guilty pleas were voluntarily and intelligently entered, so his convictions may not now be vacated because counsel allegedly did not either appreciate the significance of, or pursue a certain factual inquiry into, some matter(s) that could have uncovered a possible constitutional infirmity in the proceedings. *Tollett*, 411 U.S. at 267. Accordingly, Moates' first ground for relief is subject to summary dismissal.

### D. Ground One: Ineffective Assistance Prior to Change of Plea

Moates contends his counsel's performance was constitutionally deficient in various ways: failure to investigate Moates' defense claims; failure to review the entire discovery; failure to review applicable law; failure to file a motion to suppress the evidence seized by the Government; and, failure to investigate Moates' claims of diminished capacity. (ECF No. 46, pp. 4-6). Beyond the waiver of his pre-guilty plea claims, these allegations find no support in the record.

### 1. Failure to Investigate

Moates first complains that his counsel failed to investigate his defense that someone else committed the offenses.

Counsel does have a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Whitmore v. Lockhart*, 8 F.3d 614, 618-19 (8th Cir. 1993) (quoting *Strickland*, 466 U.S. at 691). "The decision to interview a potential witness is not a decision related to trial strategy. Rather, it is a decision related to adequate preparation for trial." *Id*. (quoting *Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir. 1990) (en banc), *cert. denied*, 498 U.S. 950 (1990)). The Court must determine "whether [counsel's] decision

-17-

not to interview [the witness] was reasonable from counsel['s] perspective at the time the decision was made." *Id.* (quoting *Chambers*, 907 F.2d at 828)).

Moates alleges that Mark Hammer, Trilennium's computer technician, assisted the FBI with the retrieval of computer files. Mr. Hammer allegedly informed Moates sometime in May 2015 that FBI Special Agent Tim Akins told him "there was no way that an indictment could be presented against [Moates]," and that Mr. Hammer told SA Akins that "Steve Scott could have done it along with David Burton." (ECF No. 46, p. 5). Moates claims he told Chronister "about everything that Mr. Hammer had told [him]," but Chronister never talked to Mr. Hammer. (*Id.*, pp. 5-6). Moates, however, fails to specify how counsel's investigation of this reported conversation would have uncovered exculpatory evidence or some constitutional violation. To the contrary, Mr. Hammer's comments were proven false in that an indictment was obtained against Moates, and there is nothing in the record to show that anyone other than Moates was involved in the illegal activity.

Moates voluntarily and intelligently pleaded guilty to the counts of conviction. He carefully reviewed and stipulated to the factual basis that independently supported his guilty pleas. At sentencing, Moates stated his acceptance of responsibility and expressed some remorse for his criminal conduct. Moates now believes he is innocent and the victim of some conspiracy. His claim of innocence finds no support in the record, and given only Moates' conclusory and self-serving allegations, the Court cannot find that counsel acted unreasonably in not investigating Mr. Hammer's comments further.

Vague and conclusory allegations are insufficient to state a ground for relief under 28 U.S.C. § 2255. *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986); *see also, Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent

presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) (conclusory allegations, unsupported by any specifics, are subject to summary dismissal); *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001) (brief, conclusory allegations that failed to cite to the record insufficient to support claims of ineffective assistance of counsel).

Moates also claims his counsel failed to investigate that his use of prescription pain medication diminished his mental capacity. (ECF No. 46, p. 6). This claim also finds no support in the record. Moates expressed understanding of the nature of the charges against him and the possible penalties at his arraignment. (ECF No. 6). He affirmed that he fully understood the written Plea Agreement and was not under the influence of anything that could impede his ability to fully understand the Plea Agreement. (ECF No. 15, ¶ 40(b)). After being sworn on oath at his change of plea hearing, Moates again stated that the prescription medication did not in any way affect his ability to understand the proceedings. (ECF No. 50, p. 4).

Moreover, Chronister was well aware of Moates' rare and painful medical condition. He referred to it in a Motion for Continuance filed on September 19, 2016, and he attached a letter he obtained from Moates' physician. (ECF Nos. 13, 13-1). The physician notes that Moates suffers from multiple lipomas; that he benefits from the resection of these lipomas; and, that he usually requires a hospital stay after excision for pain control. (ECF No. 13-1). Nothing in the physician's letter indicates that Moates' condition, or his regimen of treatment, causes Moates to suffer from any cognitive deficit. Chronister also extensively discussed Moates' medical condition and use of prescription medications in a Sentencing Memorandum filed with the Court. (ECF No. 25, pp. 3-6).

At sentencing, Chronister argued that the prescription pain medications may have impaired Moates' judgment.  (ECF No. 49, p. 66).

Thus, the record demonstrates that Chronister did investigate Moates' medical condition and use of prescription pain medication.  Moates simply has not shown there is a reasonable probability that, but for counsel's failure to further investigate his prescription medication side-effect claim, the result of the proceeding would have been any different.

## 2.  Failure to Review All Discovery

Moates next alleges that his counsel failed to review all discovery.  (ECF No. 46, pp. 5-6).  His allegations are insufficient to support a § 2255 claim.

Chronister referred to the "substantial written documentation and bank records that must be reviewed" in a Motion for Continuance filed on June 21, 2016.  (ECF No. 12).  Moates does not explain how any further review of discovery would have led to exculpatory evidence.  Instead, at his change of plea hearing, Moates expressed only some concern that further review of the Government's discovery would assist in determining the amount of loss within the Guidelines range agreed to in the Plea Agreement.  Moates asked, "[j]ust so I understand, at the sentencing phase, I would be able, with counsel, to present information when discussing the facts of the other relevant conduct and the things like that, is that correct?"  (ECF No. 50, p. 13).  The Court responded affirmatively.  (*Id*.).  Later in the change of plea hearing, after admitting the Government could prove the factual basis if the case were to go to trial, Moates appeared to have a question and he conferred privately with his counsel off the record.  (*Id*., p. 22).  Chronister then stated, "Your Honor, his question was really one that Mr. Jennen touched on briefly, the ongoing discussions pertaining to the loss issue. . . . Which do not, as he and I have discussed, which would not affect the ability of

-20-

the government to prove the actual elements of the case itself as opposed to the amount of the loss."
(*Id.*).  Moates then added, "Your Honor, I was just wanting to make sure that I understood that, yes,
there is still some discussion points on the amount between the 3.5 and the 9.5."  (*Id.*, pp. 22-23).

Thus, it is apparent that no further review of the Government's discovery materials were
related to Moates' decision to plead guilty, but rather, further review was needed to arrive at the
actual loss figure.  That issue was resolved when Moates and the Government agreed that the actual
loss caused by Moates' criminal conduct was $5,710,816.62.  (ECF No. 23-1, p. 3, "The government
... believes that the total actual loss is $5,710,816.62."; ECF No. 23-1, p. 4, "the defendant
acknowledges the government's calculations reflecting actual losses ... at $5,710,516.").

### 3.  Failure to Review Relevant Law

Moates also alleges that his counsel never "reviewed the law corresponding to the charges
against me in order to determine what advice he would provide me in my case," and "Chronister
adviced (sic) me to plea[d] guilty without ever reviewing the discovery or the law involved in my
case."  (ECF No. 46, p. 6).  Again, the record shows otherwise.

In the written Plea Agreement, Chronister expressly represented that he had "carefully
reviewed every part of this agreement" with Moates, and that he had "explained the ramifications
of the Plea Agreement" to Moates.  (ECF No. 15, ¶ 41(a, b)).  After the Government's presentation
of the factual basis for Moates' guilty pleas to the counts of conviction, and following Moates' own
admission that the Government could prove those facts if the case went to trial, Chronister also
expressed his satisfaction that the Government could prove all of the essential elements of the
offenses.  The Court specifically asked, "[t]hey are complicated counts with multiple elements to
them and so are you satisfied that the government has proof on all those counts?"  Chronister

answered affirmatively.  (ECF No. 50, pp. 21-22).

Moates now vaguely claims that Chronister did not review the law corresponding to the charges.  He does not, however, specify what legal research Chronister allegedly should have done to familiarize himself with the legal issues involved prior to advising Moates to plead guilty.  He does not, for example, cite to any case law that could have supported a defense to any of the charges of conviction.  As previously noted, vague and conclusory allegations, unsupported by specific facts, are insufficient to state a ground for relief under 28 U.S.C. § 2255.  *See Hollis*, 796 F.2d at 1046; *Blackledge*, 431 U.S. at 74; *Smith*, 677 F.2d at 41; and, *Bryson*, 268 F.3d at 562.  Though a *pro se* § 2255 motion is to be liberally construed, the petition must assert facts regarding counsel's performance.  *Saunders v. United States*, 236 F.3d 950, 952-53 (8th Cir. 2001).

### 4.  Failure to File Motion to Suppress

Moates alleges that "Chronister never filed any motion to suppress the evidence obtain[ed] by the government through the actions of Steve Scott."  (ECF No. 46, p. 6).  It is true that no motion to suppress evidence was filed.  That fact alone, however, does not resolve the issue.

The Court first notes that the evidence obtained by the Government was not obtained "through the actions of Steve Scott," but pursuant to search warrants issued by the Court for Moates' office and residence.  (ECF No. 15, p. 8).  Moates acknowledges this in his Motion.  (ECF No. 46, p. 5).

"When a defendant claims that counsel was ineffective by failing to litigate a Fourth Amendment challenge to a search and seizure, the defendant must prove that the claim is meritorious."  *Luke v. United States*, 686 F.3d 600, 605 (8th Cir. 2012) (internal citations omitted).

In a March 23, 2015 meeting with the FBI and AUSA, Moates admitted to defrauding his

clients and estimated the loss to be $2,000,000 to $3,000,000. (ECF No. 15, p. 8). He advised that he kept a list on his computer of clients he had embezzled money from and how much he had embezzled. (*Id.*). A forensic search of one of the computers seized during execution of the search warrants resulted in the discovery of Moates' list, and the list contained 11 client names and showed a total amount of $6,900,000 owed to those clients. (*Id.*).

Moates does not elucidate in his Motion upon what facts or legal theory Chronister should have challenged the search warrants and seizure of evidence. Once again, vague, conclusory, and self-serving allegations are not sufficient to support a claim of ineffective assistance of counsel. Moates has failed to prove that any Fourth Amendment challenge to the evidence would have been successful. It cannot be ineffective assistance not to raise a meritless argument. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

### E. Ground Two: Ineffective Assistance Prior to Sentencing

Moates' second ground for relief is his claim that he never received additional discovery to prepare for his sentencing; that counsel failed to inform the Court of this; and, that counsel failed to file a motion seeking a downward departure due to his diminished mental capacity. (ECF No. 46, p. 7). The Government responds that Moates has made "nothing more than a self-serving claim as it fully complied with all discovery requirements," and that Moates' claim regarding departure fails because he was ineligible for such a departure. (ECF No. 51, pp. 15-17).

### 1. Failure to Obtain Additional Discovery

Moates alleges that he "never received the discovery and computer records the government assured me I would have to prepare for sentencing," and "Chronister refused to file a Motion with

the Court informing on the government's refusal to provide me the documents and keep the promise that led to my plea of guilty."  (ECF No. 46, p. 7).

Notably, Moates does not identify any particular records or documents he claims the Government refused to provide.  He does not specify any particular Trilennium or other business records he did not receive, nor does he name any particular bank records that were denied to him. Additionally, the record establishes no "promise" by the Government to provide any additional records to him.  In his written Plea Agreement, a document Moates carefully reviewed with counsel and fully understood, Moates represented that, "[n]o promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement." (ECF No. 15, ¶ 40(c)).  Moates affirmed this representation at his change of plea hearing when he responded that nobody made "any type of promise or assurance" to him to get him to sign the Plea Agreement other than what is in the agreement itself. (ECF No. 50, p. 6).  His inquiries to the Court later in the change of plea hearing also detract from his current allegations.  He asked about his ability to present information at sentencing regarding the amount of the loss, but he did not indicate in any way that the Government had promised to provide additional discovery materials to him.  (*Id.*, pp. 13, 22-23).

Moates' allegations regarding the additional discovery are wholly incredible in the face of the record.

### 2.  Failure to Move for Departure Due to Diminished Capacity

Moates next asserts he asked Chronister "to file a Motion seeking a departure under my diminished mental capacity during the years I was under immense amount of medication," and "Chronister told me there was nothing in federal law that supported such a departure and that he

would not file the Motion." (ECF No. 46, p. 7). Chronister was correct. Moates' claim has no

merit.

The policy statement regarding diminished capacity is addressed in U.S.S.G. § 5K2.13, which

provides:

> "A downward departure may be warranted if (1) the defendant
> committed the offense while suffering from a significantly reduced
> mental capacity; and (2) the significantly reduced mental capacity
> contributed substantially to the commission of the offense. Similarly,
> if a departure is warranted under this policy statement, the extent of
> the departure should reflect the extent to which the reduced mental
> capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline
> range if (1) the significantly reduced mental capacity was caused by
> the voluntary use of drugs or other intoxicants ..."

"'Significantly reduced mental capacity' means the defendant, although convicted, has a

significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the

offense or to exercise the power of reason; or (B) control behavior that the defendant knows is

wrongful." U.S.S.G. § 5K2.12, Application Note 1.

Initially, the absence of any proof to establish a "significantly reduced mental capacity" is

noted. Aside from his self-serving allegation, Moates offers no medical evidence to support a

conclusion that he was suffering from a significantly reduced mental capacity during the commission

of the offenses. While his physician (who had treated Moates since 2009) detailed Moates' condition

and treatment, he provided no opinion that Moates suffered from any diminished mental capacity

as a result of either the condition or his use of prescription medications. (ECF No. 13-1).

Next, Chronister did file a Sentencing Memorandum in which he argued for a downward

variance due to Moates' medical condition. (ECF No. 25, pp. 3-6). At sentencing, Chronister argued

-25-

that Moates' prescription pain medication may have impaired his inhibitions.  (ECF No. 49, p. 66).

Thus, counsel satisfied his duty to raise and argue this issue with the Court, and Moates has failed

to establish that the result of the proceeding would have been any different had counsel also filed a

motion for departure.

## F.  Ground Three: Ineffective Assistance at Sentencing

For his third ground for relief, Moates alleges ineffective assistance at sentencing when his

counsel failed to inform the Court that the Government destroyed exculpatory data, and when

counsel failed to present evidence to support a downward departure or variance due to unwarranted

disparity.  (ECF No. 46, p. 8).  Neither of these claims find support in the record.

### 1.  Failure to Inform Court of Government Destruction of Evidence

Moates avers that "Chronister failed to let the Court know that the government had purposely

erased the data that would have vindicated me or at a minimum lowered the loss amounts."  (*Id.*).

Moates, however, fails to allege any facts to support his conclusory assertion that the Government

destroyed evidence.  He does not identify any bank, business, or computer records that were erased

by the Government, nor does he explain how any such records would have either vindicated him or

detracted from the loss calculation in the PSR.  It is a specious argument utterly lacking any factual

support, and the claim is properly rejected.  *Smith*, 677 F.2d at 41 (conclusory allegations,

unsupported by any specifics, are subject to summary dismissal).

Further, Moates admitted the factual basis to support his guilty pleas both in the written Plea

Agreement (ECF No. 15, ¶ 12) and at his change of plea hearing (ECF No. 50, pp. 17-21).  He also

stipulated to the range of loss, between $3.5 and $9.5 million, in the Plea Agreement.  (ECF No. 15,

¶ 19).  While expressing some reservation as to the exact amount of the loss during the change of

plea hearing (ECF No. 50, pp. 13, 22-23), his subsequent response to the initial PSR reflects that he agreed the actual loss was $5,710,816.62 (ECF No. 22, ¶¶ 6, 8).

### 2. Failure to Seek Downward Departure or Variance for Unwarranted Disparity

Moates also claims "Chronister failed to present evidence that would have supported a downward departure or variance of my sentence due to unwarranted disparity." (ECF No. 46, p. 8). He contends that "[h]ad Attorney Chronister done his job the Court would have looked back at the cases dealing with my offenses in its courtroom and sentenced me within those ranges." (*Id.*).

A sentence within the advisory guidelines range is presumptively reasonable. *United States v. Likens*, 464 F.3d 823, 825 (8th Cir. 2006). "While district courts do need to avoid unwarranted sentencing disparities, in evaluating the potential disparity a district court must compare 'defendants with similar records who have been found guilty of similar conduct.'" *United States v. Plaza*, 471 F.3d 876, 880 (8th Cir. 2006) (internal citations omitted). A defendant bears the burden of showing that the sentence should have been lower, considering the factors enumerated in 18 U.S.C. § 3553(a). *United States v. Milk*, 447 F.3d 593, 603 (8th Cir. 2006).

Here, Moates' sentence is presumptively reasonable as it fell within the advisory guidelines range. Further, Moates offers no facts to support his conclusion that his sentence represented an unwarranted disparity. While he alleges that Chronister would have discovered that others in the same district court were receiving lesser sentences for similar conduct (ECF No. 56, p. 15), he refers to no specific cases for comparison. He cites to no comparable defendants with similar records who have been found guilty of similar conduct. And, when considering the nature and circumstances of Moates' offenses, the Court at sentencing specifically commented that Moates' conduct was "some of the most reprehensible, fraudulent conduct I have seen in a white collar criminal case." (ECF No.

-27-

49, p. 69). The Court noted that Moates "used religion to gain the trust of a lot of investors"; that "these are people without means who now have nothing[,] [n]ot only do they not have anything, they don't have the ability to make money to earn back what they lost"; that the conduct occurred over a long period of time; that Moates, only two weeks after his arrest, filed bankruptcy listing some of the victims as unsecured creditors; and, that not only did Moates take the victims' investment money, he also encouraged them to mortgage their homes, "which was just really more a scheme to get money in his hands." (*Id.*, pp. 69-71). The Court reiterated, "again, this is some of the most reprehensible, fraudulent conduct I've seen in all the white collar criminal cases I have." (*Id.*, pp. 71-72).

Moates has failed to show that but for his counsel's failure to argue for a downward departure or variance due to unwarranted sentencing disparity the outcome of his sentencing would have probably been different.

### G. Ground Four: Ineffective Assistance After Sentencing

For his fourth and final ground for relief, Moates claims his counsel failed to file an appeal for him. (ECF No. 46, p. 10). He alleges that he asked Chronister to file an appeal, but Chronister told him "it would cost $14,000 to $15,000 to appeal, plus $1,800 for the transcripts," and that "attorneys who do appeals want the money up front." (*Id.*). Chronister also allegedly told Moates that he would not win an appeal and to just accept the sentence. (*Id.*). He complains that Chronister "never told me that I could have obtain[ed] In Forma Pauperis status with the Court," and he asserts "I would have appealed my case had Attorney Chronister informed me that I could appeal without prepayment." (*Id.*).

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing

to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Id*. (internal citations omitted). This is so "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice"; failure to do so cannot be considered a strategic decision, as "filing a notice of appeal is a purely ministerial task"; and, "the failure to file reflects inattention to the defendant's wishes." *Id*. As for prejudice, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id*. at 484. Thus, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance of counsel entitling a petitioner to § 2255 relief, with no inquiry into prejudice or likely success on appeal being necessary. *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citing *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) and *Roe v. Flores-Ortega*, 528 U.S. at 478).

For such a claim to succeed, however, "the defendant must show that he manifestly instructed his counsel to file an appeal. *Walking Eagle*, 742 F.3d at 1082 (internal quotation and citation omitted). "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id*.

Moates alleges Chronister dissuaded him from pursuing an appeal because of the costs involved, and Moates states he would have appealed had counsel informed him that he could appeal *in forma pauperis*. Moates' claim is undermined by the record at sentencing. After imposing sentence, the Court advised Moates of his appellate rights, including his right to appeal *in forma*

*pauperis*. (ECF No. 49, pp. 76-77). Upon informing Moates that any notice of appeal must be filed within 14 days of the entry of the Judgment, the Court advised Moates as follows:

> "If requested, the Clerk will prepare and file a Notice of Appeal on your behalf. If you cannot afford to pay the costs of an appeal or for appellate counsel, you have the right to apply to appeal in forma pauperis, which means you can apply to have the Court waive the filing fee and on appeal you can apply for court-appointed counsel." (*Id.*, p. 77).

Contrary to Moates' feigned ignorance of his right to appeal *in forma pauperis*, the Court clearly informed him of this right. Further, Moates' actions following his sentencing are simply not consistent with those of a "reasonable person who was concerned with losing [his] appeal." *See Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). As in *Barger*, Moates made no attempt to follow-up with his counsel before the time to appeal had passed. Nor did Moates contact the Clerk of Court to request that a Notice of Appeal be prepared and filed on his behalf.

Considering the Court's notification of appellate rights, and Moates' failure to take any action to manifestly demonstrate his intent to appeal, Moates' bare assertion that he would have appealed his case had Chronister informed him that he could do so *in forma pauperis* is insufficient to support habeas relief.

### H. No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). Such are the circumstances in this case.

Moates' allegations are contradicted by the record, inherently incredible, or conclusions

-30-

rather than statements of fact. Summary dismissal of Moates' § 2255 Motion without an evidentiary hearing is recommended.

### III. Conclusion

For the reasons and upon the authorities discussed above, Moates' claims are unsupported by the record in this case. It is recommended that Moates' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 42), as amended (ECF No. 46), be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of January 2019.

/s/ *Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE